D. B. BRENNAN, Respondent, v. THOMAS ROACH, Appellant.

St. Louis Court of Appeals, December 8, 1891.

Real-Estate Agents : RULE AS TO COMPENSATION WHERE THERE ARE SEVERAL AGENTS. If property is placed in the hands of a real-estate agent for sale, and a sale is brought about through his exertions, he is entitled to his commissions even though the negotiations are conducted and the sale concluded with the purchase through another agent of the principal. When the same property is placed in the hands of several real-estate agents, the commission, in the absence of a distinct contract to the contrary, belongs to the agent whose exertions are the procuring cause of the sale, and not to the one who first consummates the sale.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*John M. Dickson,* for appellant.

( 1 ) Commissions are not due until the work is complete. *McGarvan v. Woodlief,* 20 How. 221 ; *Welker v. Tirrell,* 101 Mass. 257 ; *Bernstein v. Laus,* 104 Mass. 214 ; *Newhall v. Pierce,* 115 Mass. 657 ; *Trundy v. Steel Co.,* 6 Rob. ( N. Y.) 212. ( 2 ) Where several brokers are employed to effect a sale of property, real or personal, the one who succeeds in making the negotiations is entitled to the commissions (*Glenn v. Davidson,* 39 Md. 365); where two close negotiations, the one who first closes the same. *Glenn v. Davidson,* 39 Md. 365. ( 3 ) The duty of a broker employed to sell property is to bring the buyer and seller to an agreement. *Sibald v. Iron Co.,* 83 N. Y. 378.

*Thos. Morris*, for respondent.

The law is well established that in a suit by a real-estate agent for the amount of his commission, it is immaterial that the owner sold the property and concluded the bargain. If, after the property is placed in the agent's hands, the sale is brought about or procured by his advertisements and exertions, he will be entitled to his commissions ; or if the agent introduces the purchaser or discloses his name to the seller, and, through such introduction or disclosure, negotiations are begun and the sale of the property is effected, the agent is entitled to his commissions, though the sale may be made by the owner. This is the language of the supreme court in case of *Tyler v. Park*, 52 Mo. 249. The same ruling is followed in the following decisions : *Lusdorff v. Schmidt* 55 N. Y. 319 ; *Lincoln v. McClatchie*, 36 Conn. 136 ; *Shepard v. Hedden*, 29 N. J. Law, 334 ; *Jones v. Berry*, 37 Mo. App. 125 ; 86 Mo. 178 ; *Winans v. Jaques*, 10 Daly, 487 ; *Goffe v. Gibson*, 18 Mo. App. 1 ; *Anderson v. Cox*, 16 Neb. 10 ; *Bell v. Kaiser*, 50 Mo. 150 ; *William v. Leslie*, 11 Ind. 90 ; *Lloyd v. Mathews*, 51 N. Y. 124 ; *Arrington v. Carey*, 5 Baxter, 609 ; *Carter v. Webster*, 79 Ill. 435 ; *Royster v. Mageveney*, 9 Lea, 148.

THOMPSON, J.—This action was commenced before a justice of the peace to recover an amount claimed to be due the plaintiff from the defendant for services rendered by the plaintiff as a real-estate agent in procuring a purchaser for a house of the defendant, which he had put into the plaintiff's hands for sale. The defendant denied that the plaintiff had procured a purchaser for the house ; but, on the contrary, alleged that another firm of real-estate agents, Charles H. Gleason & Co., had procured such purchaser, and that the defendant had paid to them the usual commissions, to-wit, two and one half per cent. on the purchase price.

There was a trial before a jury in the circuit court, and a verdict and judgment for the plaintiff for the amount claimed, from which the defendant prosecutes this appeal, assigning for error that the court erred in its rulings on the instructions, and that, as matter of law, there was no evidence warranting a recovery.

The evidence tended to show that the defendant, having a house for sale with seventy-five feet of ground attached to it, offered it for sale with thirty-seven and one-half feet of the ground for $8,500, and put it in the hands of three real-estate agents for sale on those terms,—the plaintiff, Mr. Farrelly and Gleason & Co. As to whether the defendant, when he put the house into the hands of the plaintiff for sale, informed the plaintiff that he had put it into the hands of any other agent, the evidence is conflicting. The plaintiff advertised the property for sale, and thereafter one Ready called upon him, and desired to examine it and inquired the price and terms, and, at the plaintiff's procurement, did visit the property and examine it, and was pleased with it and satisfied with the price and terms. Then the evidence tends to show that Mr. Ready, having a friend, Mr. Von Phul, who was a real-estate agent, procured Mr. Von Phul to act for him in the matter, and that Mr. Von Phul thereupon went, not to the plaintiff, but to Gleason & Co., one of the other agents in whose hands the defendant had placed the property for sale, and paid to them, as agents of the defendant, $100 earnest money, and took from them, as such agents, a written contract of sale, and that thereafter the sale was consummated between the defendant and Ready through Gleason & Co., and that the defendant paid the commissions to Gleason & Co., and refused to pay them to this plaintiff.

The evidence makes it very clear that the *work*, which brought about the sale, was done entirely by the plaintiff, and not by Von Phul or by Gleason & Co.

The defendant himself testifies that he got the information about Ready, the purchaser, from the plaintiff; that the plaintiff told him who the party was; that he thereupon made an appointment with Ready at the house. It also appears from the testimony of Ready that the plaintiff gave him the terms of sale, and the name of the owner; that the defendant thereupon called upon him, Ready, and made an appointment with him to see and examine the house, which Ready did; and that this was all the influence brought to bear upon Ready's mind from any source in deciding him to buy the house. It also appeared from Ready's testimony that, when Von Phul called his attention to this house, he stated to him that he had seen it, told him who the owner was and the price of it, and asked him to see the defendant, believing that he could do better with him than he himself could do.

Upon substantially this state of evidence the court gave the following instruction at the request of plaintiff: "If the jury believe and find from the evidence that the plaintiff is a real estate-agent, and that defendant placed in his hands the sale of the property or premises, 3829 Page avenue, in the city of St. Louis, with instructions to sell the same or procure a purchaser therefor; and, if you further find from the evidence that, in accordance with such instructions, plaintiff did advertise the said property for sale in one or more newspapers published in the city of St. Louis, and did use such efforts and exertions on his part as were necessary to be done to bring the sale of the said property to the attention of purchasers contemplating the purchase of such property, and by reason of such efforts procured a purchaser for such property and introduced, or caused to be introduced, such purchaser to the defendant, the owner of the said property, and that the said purchaser so introduced by the plaintiff to the defendant subsequently purchased the said property from the defendant as the

owner at the price fixed upon it by the plaintiff, without any further introduction or agency on the part of the said plaintiff, and that the purchase price of the said property was $8,500, and that two and one-half-percent. commissions is the usual and reasonable price for such services, you will render your verdict in favor of the plaintiff for an amount not to exceed the sum of $212.50.''

The defendant requested, and the court refused, the following instructions: '' The jury are instructed that, even if they believe from the evidence that Bart. Ready first learned of the house in question from the plaintiff, and that, at Brennan's request and direction, Ready and Roach sought each other out with a view of negotiating for the purchase or sale of the house in question, they must find a verdict for defendant, unless they further believe from the evidence that Ready then and there either offered the price fixed by Roach with Brennan, or some other price and terms which Brennan accepted.

'' If the jury believe from the evidence that, at or about the time Roach placed the house in question in Brennan's hands for sale, he placed the same in the hands of Thomas F. Farrelly and Charles H. Gleason & Co. for the same purpose, and that Ben Von Phul went to Charles H. Gleason & Co., paid the earnest money required by the latter, and took the usual receipt therefor, then the jury are instructed that the paying of the earnest money and giving of receipt constituted a sale by Gleason & Co. of the house, and unless they further find from the evidence that Roach directly referred Ready to Gleason & Co. at any time after Roach & Ready came together, they must find for the defendant, unless they further believe from the evidence Ready, when he met Roach, offered to buy his house at the figures fixed by Brennan and Roach, or offered some other sum which Roach accepted.''

"The jury are instructed that, though Ready and Roach came together through the reference of each to the other by Brennan, and Ready did look at the house and inquired the price and terms of sale, still, if they find further from the evidence that Ready did not make an offer then and there or at any other time to Roach in person, but that Ready subsequently employed an agent to negotiate for the purchase of the house, and the agent thus employed went to Gleason & Co., and finally closed the sale of the house by paying earnest money, they will find for defendant.

"The jury are instructed that, even if they find from the evidence that Ready and Roach came together first through Brennan, through the reference of each to the other by Brennan, still, if they find that Ready did not at the time, or at any other time, in person, to Roach in person, make an offer for the house on the terms fixed by Roach with Brennan, or any offer which Roach in person accepted, they must find for defendant."

Defendant also requested the following instruction : "The jury are instructed that if they believe from the evidence that, at the time Roach placed the house in question in Brennan's hands for sale, he informed him he had placed it in the hands of other agents, and that the one who sold it would be entitled to commissions, they will find for defendant, provided they further find from the evidence that the sale was not closed or consummated by plaintiff."

This instruction the court refused as offered, but gave in a modified form so as to make it read as follows: "The jury are instructed that if they believe from the evidence that, at the time Roach placed the house in question in Brennan's hands for sale, he informed him he had placed it in the hands of other agents, and that the one who first sold it, and no *one else*, would be entitled to commissions *for making the sale*, they will

find for the defendant, provided they further find from the evidence that the sale was not closed or consummated by plaintiff."

It is perceived that the court in the first instruction given put the case to the jury in conformity with the settled law of this state. That law is that, if property is placed in the hands of the real-estate agent for sale, and a sale is brought about through the exertions of the agent, the latter is entitled to his commissions, even though the negotiations are conducted and the sale concluded by the owner of the land and the purchaser (*Jones v. Berry*, 37 Mo. App. 125, 130; *Goffe v. Gibson*, 18 Mo. App. 1; *Tyler v. Parr*, 52 Mo. 249; *Bell v. Kaiser*, 50 Mo. 150); and, for equal reasons, although the sale is concluded by *another agent* of the owner of the land and the purchaser.

An analysis of the instructions, tendered by the defendant and refused, will make it plain that they are all drawn upon the theory that, in order to entitle the plaintiffs to his commissions, there must have been *an offer and an acceptance*—either an offer by Ready to the plaintiff as the defendant's agent, and an acceptance by the plaintiff as such agent, or an offer by Ready to the defendant, brought about by the procurement of the plaintiff, made directly to the defendant and accepted by him, and distinct from the offer and acceptance made through Gleason & Co.; in other words that the plaintiff must have concluded a negotiation with Ready either by himself or by bringing Ready and the defendant together, outside of what was done by Von Phul and Gleason & Co. And the argument is that, where real estate is put into the hands of several agents for sale, the commissions belong to the agent who first *consummates* the sale. This is not our understanding of the rule of law, unless there is a distinct contract to that effect between the owner and the agent. In the absence of a distinct contract that

the commission is to be paid to the agent who first consummates the sale, it belongs, as in other cases, to the agent whose exertions are the procuring cause of the sale. After he has shaken the tree, another agent is not to be permitted to run up and carry off the fruit; and if the owner allows this to be done, he is responsible to the first agent. The instructions which were requested by the defendant and refused by the court would, therefore, have misled the jury, and they were hence rightly refused.

The modifications introduced by the court into the last instruction tendered by the defendant would evidently convey to the minds of the jury the distinction above stated, that the parties can, if they wish, contract that the commission shall go exclusively to the agent who first consummates the sale; but they were not in strictness proper, because the evidence furnished no hypothesis quite as strong as the hypothesis that Roach, when he placed the house in the hands of Brennan for sale, told him that the agent who first sold it, and no one else, would be entitled to the commissions for making the sale. But it seems that the additions which the court made were merely an attempt on the part of the court to make the hypothesis furnished by the evidence more clear to the minds of the jury, by interpretation; and, as the language introduced by the court did not essentially change the meaning of the hypothesis as contained in the instruction as requested, it is apparent that the jury could not have been misled by it to the prejudice of the defendant, and that the modification was hence harmless. It seems plain, that if they had credited the defendant's evidence, they would, under the instruction as given, have found for him.

The judgment will be affirmed. It is so ordered. All the judges concur.