WAYNE A. DUNCAN, Appellant, v. SARA B. TURNER, Respondent.

St. Louis Court of Appeals, March 1, 1913.

1. **REAL ESTATE BROKERS: Right to Commission.** A real estate broker, in order to recover a commission for negotiating an exchange of real estate, which his principal refused to consummate, must show full performance of his obligations under the agency contract.

2. ————: ————: Defenses: Fraud. Fraudulent misrepresenta-
tions made by a real estate broker to induce his principal to
enter into a contract to exchange real estate, which was after-
wards repudiated by the latter, constitute a defense to an
action by the broker for a commission.

3. ————: Right to Commission. A real estate broker is entitled
to a commission for procuring a purchaser for land, when he
produces one who is ready, willing, and able to buy on his
principal's terms, although the latter refuses to consummate
the sale.

4. ————: ————. The negotiation, by a real estate broker, of a
contract of sale or exchange of real property with a responsible
person and on his principal's terms, which contract can be en-
forced by the latter, is equivalent to the production of a pur-
chaser, and entitles the broker to a commission.

5. ————: ————. A contract to pay a real estate broker five
per cent commission for procuring a purchaser for real estate
entitles him to a commission of that amount for procuring a
customer with whom the principal contracts for an exchange of
properties, especially where the principal, in employing the
broker, stated that she would exchange her land for other
property.

6. CONTRACTS: Construction. The intention of the parties to a
contract is to be gathered from a consideration of all its pro-
visions.

7. REAL ESTATE BROKERS: Right to Commission. The fact
that a sale effected by a real estate broker does not conform to
his original authority does not prevent the recovery of a com-
mission by him, if the sale was ratified by his principal or con-
formed to modified authority.

8. ————: ————: Fraud of Agent: Negligence of Principal.
Where the owner of farm land was induced by a real estate
broker, with whom she had listed her land for sale or exchange,
to enter into an exchange contract for four city houses, by
false statements as to the condition of three (which, at his
suggestion, she refrained from examining) as to the time when
a deed of trust on them fell due, and that the alley behind them
was a private one and not subject to be improved by the city
at the expense of abutting owners, the broker could not re-
cover a commission on his client's refusal to carry out the
contract, inasmuch as, because of the confidential relation
existing between them, she was entitled to rely on his repre-
sentations; and this is true although the truth was discoverable
on proper inquiry by her.

9. **FRAUD AND DECEIT: Confidential Relation: Estoppel.** One who occupies a confidential or *quasi* confidential relationship toward another and asserts to such other as a fact that which he might have known was not a fact, is estopped to say that he did not intend to deceive the other, or that the other should not have relied upon his statements, or that he had no knowledge on the subject whatever.

10. **REAL ESTATE BROKERS: Action for Commission: Fraud: Questions for Jury.** In an action by a real estate broker for a commission for negotiating a contract for the exchange of real estate between defendant and another, which contract defendant refused to carry out, defended on the ground that defendant was induced to enter into the contract by means of fraudulent misrepresentations on the part of plaintiff, *held*, under the evidence, that the case was one for the jury.

11. ———: ———: **Counterclaim: Instructions.** In an action by a real estate broker for a commission for negotiating a contract for the exchange of real estate between defendant and another, defendant filed a counterclaim alleging that she was induced to execute the contract through plaintiff's fraudulent misrepresentations; that, upon learning of the fraud, she repudiated the contract, but that plaintiff nevertheless recorded it, and that, in order to remove the cloud upon her title created by it, she incurred expense, for which she prayed judgment. The evidence showed that there were defects in plaintiff's customer's title and that these had not been cured at the time stipulated for the exchange, but that the customer was moving toward that end at the time, and the contract provided that he should have a reasonable time to cure defects. The court charged that, although no fraud was committed, yet if the jury found that the requirements of the contract were not complied with by plaintiff's customer until after the time for so doing had elapsed, and that thereafter defendant notified plaintiff that she would not proceed under the contract, but he nevertheless thereafter recorded it, and, in order to remove the cloud upon her title created by it, she incurred expense, she was entitled to recover under her counterclaim. *Held*, that the instruction was erroneous in permitting a recovery under the counterclaim even though no fraud was committed by plaintiff, since, under the evidence, that was the only ground upon which a recovery could be had; that it was also erroneous in so far as it assumed that the failure of plaintiff's customer to clear his title by the fixed time entitled defendant to cancel the contract, when the contract gave the parties a reasonable time after such date in which to perfect title; and that it was erroneous in so far as it assumed that it was an actionable wrong for plaintiff to record the contract after re-

ceiving notice that defendant had repudiated it, even though it was a valid contract.

12. **RECORDING INSTRUMENTS:** Fraudulent Recording: Right of Recovery. The recording of a contract affecting real estate will not give rise to a cause of action unless it was recorded by one who, without authority, purported to represent the owner, or unless the contract was procured from the owner through fraud.

Appeal from St. Louis City Circuit Court.—*Hon. Charles Claflin Allen,* Judge.

REVERSED AND REMANDED.

*John Cashman* for appellant.

(1) The defendant's answer admits that defendant executed the contract sued on and it was fatal error to give the instruction in the nature of a demurrer to the evidence. (a) The rule has been long established, in Missouri, that if a real estate agent procures a purchaser, ready, willing and financially able to make the purchase absolutely, on the terms fixed by the principal, or to respond in damages, and the principal accepts such purchaser, and enters into a contract with him respecting the sale of the property, the agent is prima facie entitled to his commissions. Sallee v. McMurry, 113 Mo. App. 253; Lemon v. Lloyd, 46 Mo. App. 452; Love v. Stone, 31 Mo. App. 501; Chipley v. Leathe, 60 Mo. App. 15; Childs v. Crithefield, 66 Mo. App. 422; Gellatt v. Ridge, 117 Mo. 553; Nichols v. Whitacre, 112 Mo. App. 692; Morgan v. Keller, 194 Mo. 663; Kilpatrick v. Wiley, 197 Mo. 123; Goldsberry v. Eades, 161 Mo. App. 8. (b) Even though the contract in this case should be construed to grant an authority to sell only, yet if an exchange and not a sale be made, still the plaintiff is entitled to his commissions, to the same extent as he would be if a sale had been made. Gether v. McCormick, 79 Mo. App. 332; Nichols v. Whitacre, 112 Mo. App. 692; Gellatt v. Ridge, 117 Mo. 553.

*W. L. Coley* for respondent.

NORTONI, J.—This is a suit by a real estate broker for his commissions. Besides denying the right of recovery, defendant, by her answer, interposed a counterclaim. At the conclusion of the evidence, the court peremptorily directed a verdict for defendant on plaintiff's cause of action and submitted the issue arising on defendant's counterclaim to the jury. The finding and judgment were accordingly against the plaintiff on his cause of action and in favor of the defendant on her counterclaim in the amount of $422.35. From this judgment plaintiff prosecutes the appeal.

We will first review the matter pertaining to plaintiff's cause of action and then as to defendant's counterclaim. It appears plaintiff is a real estate broker in St. Louis and defendant owned a farm of 328 acres in Boone county which she desired to dispose of. On March 5, 1909 defendant authorized plaintiff, in writing, to sell her farm at an agreed valuation of forty-five dollars per acre and agreed to pay him therefor a commission of five per cent on the purchase price for conducting the sale. The written contract by which defendant employed plaintiff to dispose of the farm seems to contemplate that a cash sale should be made at forty-five dollars per acre, but this writing consists in part of numerous questions propounded to defendant and answers given by her which indicate as well that she would exchange the farm for other property. Two of those questions and answers are as follows: "Will you exchange for St. Louis income property? A. I might . . . Will you exchange the farm for any other property? A. Yes." However, we do not regard this as very material, for it appears that defendant actually entered into a written contract with a customer by the name of Funderburk, procured by plaintiff, for the exchange of her farm for four dwelling houses in St. Louis and a sum of money. This be-

ing true, plaintiff's right of recovery as for commissions. must, of course, depend upon the validity and sufficiency of the 'contract between Funderburk and defendant for the exchange of properties to the end of effectuating a sale, for it devolves upon him to show full performance on his part in accordance with his original undertaking and such modifications as the defendant may have authorized in the meantime. And the strict letter of his original agency contract is no longer material.

The evidence tends to prove that plaintiff interested Homer Funderburk in defendant's farm and interested defendant as well in four houses, numbered 5052, 5054, 5058, and 5060 Garfield avenue, St. Louis, which Funderburk owned at the time. Funderburk sent his brother-in-law, Wahl, to investigate defendant's farm, and defendant, in company with plaintiff, looked over one of Funderburk's houses and accepted assurances from plaintiff touching the others until she became satisfied concerning their exchange value. After some preliminary negotiations between the parties, plaintiff drew up a contract in writing, of date May 5, 1909, which was executed by both defendant and Funderburk and stipulated for an exchange of the property owned by them on or before the 12th day of June thereafter. According to this contract, defendant agreed to convey her Boone county farm to Funderburk with good and sufficient title and clear of all incumbrances and Funderburk agreed to convey to her the four houses, numbered 5052, 5054, 5058, and 5060, Garfield avenue, St. Louis, each house subject, however, to a deed of trust of $3,500 at six per cent, etc. Furthermore Funderburk agreed to pay defendant at the time the exchange of properties was consummated, in cash, the sum of $4760. This written contract provides, too, that the titles to the properties should be good, but if upon examination either title should prove defective, a reasonable time is to be allowed to perfect

the same and the contract to remain in force and effect in the interim. It appears that some slight defects were discovered in defendant's title when an abstract to the farm was furnished and requirements were preferred touching the matter of curing the same. When the title to Funderburk's houses was examined and a certificate thereof furnished plaintiff, it appeared there was a second deed of trust for $2000 thereon and a judgment lien for something near $500 against the property and besides some unpaid taxes. Furthermore, the certificate of title revealed that the title stood in one Mrs. Mathias and not in Funderburk at all, but this matter is unimportant, for Funderburk testified positively that he owned the property and it is to be inferred that his deed was not yet recorded. Besides, either side, as is usual, was entitled to a reasonable time to cure defects in title.

It is shown and not contradicted that Funderburk was a man of considerable means and ready, able and willing to consummate the trade. The evidence reveals that he deposited a certified check for $7500 with plaintiff to remove the second mortgage, judgment, tax lien and other incumbrances on the houses not mentioned and provided for in the contract and to pay the $4760 cash agreed upon with defendant, but, notwithstanding this, defendant refused to carry out her part of the contract, for the reason that plaintiff had practiced deceit upon her. If plaintiff practiced deceit upon defendant and induced her, through misrepresentations, to enter into the contract with Funderburk, no one can doubt that such matters may be shown in defense of this suit by the agent for his commissions, claimed on the theory that he has performed his contract of agency through consummating a contract between Funderburk—one ready, able and willing to buy —and defendant, for a sale or exchange of her farm. But, though such be true, the question of plaintiff's right of recovery as for commissions was one for the

jury, and the court erred in peremptorily directing a verdict against him thereon.

In those cases where the suit is by the real estate broker against his principal for commissions, and it appears the actual sale of the property has been defeated because of the owner's refusal to complete the trade, the law regards and treats as full performance of the agent's contract the production and introduction as such to the seller of a proposed purchaser ready, able and willing to buy the property in accordance with the terms imposed by the owner. In the sense of the law, the broker has performed his contract and effected a sale when he has produced and introduced to the seller a purchaser ready, willing and able to buy, who is prevented from so doing alone by the refusal of the seller to carry out the contract. [See Goodson v. Embleton, 106 Mo. App. 77, 80 S. W. 22; Sallee v. McMurry, 113 Mo. App. 253, 88 S. W. 157.] Here it does not appear that the plaintiff produced and introduced Funderburk to the defendant in person, but, by construction of law, the equivalent is accomplished by the written contract which he negotiated between the parties. Where the broker, through his efforts, procures a purchaser for the property of his principal and negotiates a valid, binding contract for his principal, with a responsible person, for the sale or exchange of properties between them, which contract may be enforced by the owner of the property against the purchaser so produced by the broker, the procurement of such enforcible contract alone is regarded as a full performance on the part of the broker, so as to entitle him to his commission where the owner —that is, his principal—refuses, without just cause, to complete the transaction. [Hayden v. Grillo, 35 Mo. App. 647; Goldsberry v. Eades, 161 Mo. App. 8, 142 S. W. 1080.] According to the uncontradicted evidence, plaintiff procured a purchaser for defendant's property and drafted a valid, enforcible written con-

tract between them which was executed by Funderburk on the one part and defendant on the other, stipulating for an exchange of property as above set forth. It appears Funderburk was responsible, and, according to the evidence, might have been required to respond in equity as for a specific performance of the contract, or in damages at law for its breach. Obviously the matter of plaintiff's right to recover commissions on this showing was a question for the jury.

But it seems the court placed a narrow construction upon the contract by which defendant employed plaintiff to negotiate a sale of her farm, and directed a verdict for defendant on the matter of his right to recover commissions on the theory that defendant should not be required to respond therefor except in the case of a sale of her farm for cash. This ruling reveals both an erroneous view of the broker's contract of agency and the case made by the evidence. It is true that the written contract, by which defendant authorized plaintiff to sell her farm and stipulated a commission of five per cent for so doing, seems to contemplate a sale at a valuation of forty-five dollars per acre, for it says: "I hereby authorize Duncan to sell the above described farm for the consideration of $45 per acre, and I agree to pay the customary commission, five per cent (5%) for conducting said sale." But, be this as it may, other portions of the same writing reveal that defendant authorized plaintiff to negotiate for the exchange of her farm for other property as well, and especially is this true when such negotiations were actually conducted thereafter with defendant's consent and acquiescence. One of the questions propounded to defendant in this written authority and in connection with it and the answer to it is, "Will you exchange for St. Louis income property? A. I might." Another question and answer are "Will you exchange the farm for other property? A. Yes." Obviously this written authority, when considered all together,

reveals that plaintiff was authorized to negotiate a
sale of defendant's farm for cash at $45 per acre or
an exchange for other property which might be ac-
ceptable to her. The contract for five per cent com-
missions is to be construed with reference to either,
as the case may be. The polar star for the construc-
tion of instruments is that the intention of the party
executing the document shall not be gathered from a
remote or one apparent pertinent provision thereof
alone, but, on the contrary, is to be gleaned from all
that appears within the four corners of the instrument.
[See Gibson v. Bogy, 28 Mo. 478; Williamson v. Brown,
195 Mo. 313, 337, 93 S. W. 791.] Though the conclud-
ing paragraph of the contract of agency stipulated a
commission of five per cent for a sale at $45 per acre,
cash, the prior portions above copied revealed an in-
tention on the part of defendant to consider proposi-
tions for the exchange of her farm for other property
and, of course, if one agreeable to her was accom-
plished through the efforts of plaintiff the contract
for commission remained intact, for no other commis-
sion was provided therein. It is certain that an agent
is entitled to his commissions if he effects a sale of
the property for his principal, even though the sale is
not made in accordance with his original authority,
if it appears that the contract was subsequently modi-
fied by the owner of the land and the transaction
finally consummated by him in accordance with such
modified contract. This is true, too, though the agent
departs from the terms of his original authority in
effecting the sale, provided his principal, the owner,
subsequently adopts his negotiations and completes
the transaction in accordance therewith, for, in such
circumstances, a full ratification appears and the
agent's original undertaking is to be regarded as mod-
ified by such subsequent ratification on the part of his
principal. [See Gelatt v. Ridge, 117 Mo. 553, 23 S. W.
882; Sallee v. McMurry, 113 Mo. App. 253, 88 S. W.

157.] The evidence shows that defendant did not demur to the proposal for an exchange of properties with Funderburk but rather that she entered into negotiations thereabout on plaintiff's suggestion as if his authority related to either a sale for cash or exchange of her farm for other property satisfactory to her. She looked through one of the houses owned by Funderburk before entering into the contract and made inquiries of plaintiff regarding the others. She agreed to exchange her farm clear of incumbrances for the four houses, each subject to a deed of trust of $3500 with six per cent interest thereon, and a payment to her of $4760 in cash. These terms, along with other specifications not essential to mention at this time, were reduced to writing and incorporated in the contract between her and Funderburk. Afterwards she refused to make the exchange when it appeared that Funderburk was ready, able and willing to complete the full measure of his undertaking. Obviously if nothing more appeared in the case, plaintiff would be entitled to his commissions for having performed the full measure of his undertaking as a real estate broker in the premises, and it is clear that his right to compensation should have been referred to the jury.

However, defendant sets forth in her answer and insists in her evidence that plaintiff is not entitled to recover for the reason he induced her to enter into the contract with Funderburk through certain false and fraudulent representations made at the time and which she believed and on which she relied when she executed the same. Defendant insists that plaintiff represented to her that all of the four houses which she was to receive from Funderburk were equipped with fixtures, hardwood floors, and each with a steam heating plant in good condition and all were decorated throughout, etc.; and further that the deeds of trust thereon did not fall due until June, 1911, whereas in fact they fell due April, 1910. She accompained plain-

tiff and went through one of the houses only. He informed her they were all alike and suggested she should not look through the others because it interfered with the tenants therein. She says he assured her he was looking after her interests and would do so in the premises and that his word was good concerning the matter, or something to that effect. It might be suggested that defendant was negligent in not going through the other four houses as they were all adjacent in one group and she was present in one of them at the time, but to apply the doctrine of negligence in the circumstances of the case would be severe, indeed, for, in a measure, the relation of principal and agent obtained between her and the plaintiff. The same is true of the deeds of trust of record. While the real estate agent is regarded in a sense as a broker and enjoys considerable latitude on that account, it is obvious that the confidential relation between principal and agent obtained here between plaintiff and this lady who seems to have relied on his word and judgment in a confiding manner. Certainly she should not be declared negligent as a matter of law in the circumstances of the case for failing to utilize the means of knowledge at hand and look through the other houses, investigate public records, etc., and if the jury should find that plaintiff made such representations to defendant, that they were false, that she relied upon them and entered into the contract with Funderburk because of them, then he should not be permitted to recover commissions though he procured a contract from a responsible party, for the law will not permit one to avail himeslf of benefits from his own wrongful act.

Another misrepresentation of fact set forth in the answer and relied upon at the trial by defendant concerns the alleyway in the rear of the four houses. Defendant said she informed plaintiff that she would not negotiate for the houses if the alleyway in the rear was a public one and likely to be constructed at the expense

of the property, as is the case with such alleys, and thereupon he assured her it was a private alley and no expense to her nor charge upon the property whatever could be entailed on that account. Afterwards she dis-covered this was false; that the alley was not a private one, but, rather, public; that it was unmade and threat-ened an immediate expense to be levied by the city on account of construction. Of course, if such representa-tion was made by plaintiff, relied upon by defendant and she was influenced thereby in entering into the contract with Funderburk, at plaintiff's instance, then defendant is entitled to have this matter considered, along with the other alleged misrepresentations, as competent to defeat the right of recovery. This is true, too, whether plaintiff knew the several represen-tations were false at the time he made them or not, for the plaintiff stood toward the defendant in the cir-cumstances of the case as one having peculiar knowl-edge on the subject. Representations made by one under such circumstances are likely to carry great weight, especially with one who has a right to rely, as this defendant did, upon the word of plaintiff who occupied either a confidential or a *quasi* confidential relation concerning this real estate transaction. The law will not permit the plaintiff to assert for knowl-edge what he might have known that he ought not even to have believed and then say that he did not intend to deceive defendant thereabout, or that she should not have relied upon his statements, for the means of knowledge were at hand, or that he had no knowledge on the subject whatever and therefore did not intend to deceive, for the principle of estoppel precludes him. [Serrano v. Miller & Teasdale Commission Co., 117 Mo. App. 185, 93 S. W. 810; Raley v. Williams, 73 Mo. 310.] On the evidence in the record, the plaintiff's cause of action should have been submitted to the jury

and the evidence pertaining to misrepresentations above discussed is available in defense thereof.

Defendant's counterclaim sets forth all of the facts pertaining to the matter and avers that plaintiff induced her to sign and execute the contract for an exchange of properties with Funderburk by means of certain fraudulent representations therein set forth and which have been discussed heretofore; that upon discovering the truth with respect to these matters, she forthwith notified both Funderburk and plaintiff that she would not carry out her part of the contract. Notwithstanding this, plaintiff filed the contract between defendant and Funderburk of record in the office of the recorder of deeds for Boone county and had the same spread upon the record there, that the contract thus recorded in the county where her land lay constituted an apparent cloud upon her title which she was required to remove before negotiating a loan thereon which it was necessary to do. To remove this alleged apparent cloud upon her title, plaintiff was forced to and did institute a suit in equity in the circuit court of Boone county against Funderburk, which resulted in the cancellation of record of the contract before mentioned; that in and about the prosecution of this suit and the expenses entailed through plaintiff's wrongful acts in procuring the contract and recording the same, defendant was required to and did pay out the sum of $500 and that she has been otherwise injured and damaged by reason of the said contract being placed on record by plaintiff, as aforesaid, in the further sum of $500. In support of the counterclaim, the evidence tends to prove that plaintiff misrepresented the facts to defendant and induced her to sign the contract for an exchange with Funderburk thereby. Finally upon being fully advised concerning the whole matter, defendant notified plaintiff and also Funderburk that she would not carry out the contract on her part for those and other reasons. The contract re-

quired the parties to complete the exchange of properties and pay over the money on or before the 12th day of June, and it seems that Funderburk's title to the property in St. Louis had not been fully cleared of the liens and incumbrances not mentioned in the contract at that time. However, he was moving to that end and according to the evidence he deposited a certified check for $7500 with plaintiff to do so.

For defendant the court gave the following instruction:

"The court instructs you that if you believe and find from a preponderance of the evidence admitted in this case that the defendant Turner was not fraudulently induced to sign the instrument in writing admitted in evidence as plaintiff's Exhibit 'B,' yet if you further find from a preponderance of the evidence admitted as proof, that the conditions named in said written instrument were not complied with on the part of the plaintiff, or the person whom he claimed to represent, until after the time for its completion, or such further time as may have been extended by the defendant Turner for such compliance, if any, then the defendant Turner had the right to cancel said contract and refuse to further be bound by the same, and if you find and believe from a preponderance of the evidence the facts as above stated and that the defendant Turner, after the expiration of said contract by its terms, or after any time extended by the defendant, if any, notified the plaintiff Duncan that she would not further proceed under said contract, and if you further find that thereafter the plaintiff Duncan caused the said contract to be recorded in Boone county, Missouri, and that as a result thereof the defendant Turner suffered pecuniary loss, then your verdict should be for the defendant on her counterclaim in whatever sum, if any, the evidence shows her damages to have been."

This instruction is erroneous throughout. It authorizes a recovery by defendant on the counterclaim even though no fraudulent representations were put forward by plaintiff to induce her to sign the contract, which she alleges was afterwards recorded by him and thus constituted the gravamen of her complaint. The instruction authorizes a recovery on the counterclaim even though no fraud was employed in procuring the contract if the jury should find that the conditions named in the written contract were not complied with on the part of the plaintiff or Funderburk until after the time of its completion, that is, we understand, June 12th, or such further time as may have been extended by the defendant Turner for such compliance, and says that defendant had the right to cancel the contract if not complied with within that time. It thus assumes defendant had the right to cancel the contract for the mere failure of Funderburk to clear the liens off of his property and straighten up the title thereto on or before June 12th, the date the exchange was to be made, or at the expiration of such time thereafter as defendant had extended, and upon this assumption directed a finding for defendant if it should appear that, after she notified plaintiff she would not consummate the trade, the contract was nevertheless recorded in Boone county and that as a result defendant suffered pecuniary loss, etc. It may be said of this, that the contract between defendant and Funderburk provides in plain terms that either party may have a reasonable time after June 12th to perfect the title, clear off the liens, etc., and the contract should remain in full force and effect in the interim. The instruction pays no heed to this matter of reasonable time thus stipulated for but proceeds as though it devolved upon Funderburk to clear his title by June 12th, or within such time as defendant had extended to him. This is clearly an erroneous view, for, by assuming the contract to be valid, as the instruction does, either party

was entitled to the reasonable time provided for therein, and it is clear no default could be found until such had elapsed. Furthermore, this instruction proceeds as though it were an actionable wrong for plaintiff to record this contract in Boone county, even though it was valid in all respects, after defendant had notified plaintiff that she had repudiated and rescinded the same because Funderburk had not complied with its terms in fullfilling all of the conditions therein named. If the contract was a valid one, plaintiff had a right to record it, and there was no wrong in so doing and certainly defendant should not be permitted to recover for that unless the jury should find that Funderburk had not complied with its terms on his part, though a reasonable time had been granted him beyond June 12 for so doing and defendant had repudiated it. But even then, there is no right of recovery for the mere recording of a valid contract which is, under the law, admissible to record, for such contracts are muniments of title and may entail no actionable injury if rightfully made with full authority or without covin or deceit. It is only where the contract is made and recorded in the name of the owner by one without authority who purports to represent the owner or is procured from the owner through fraud and deceit and then recorded that the mere act of recording it against the land will operate a cause of action against the tortious agent, and such cause of action arises, of course, because of the tort involved in the wrongful act of executing the contract on the part of the agent without authority from the principal or inducing the principal to do so through fraudulent representation. [See Kilpatrick v. Wiley, 197 Mo. 123, 160, 161, 95 S. W. 213.] Whether the mere recording of this contract would constitute a cloud on title at all, it is not necessary to decide, for it sufficiently appears that in the instant case it actually did infringe defendant's rights, in that it impeded the placing of a loan on her land

until it was canceled and removed from the record by a court of equity. The evidence tends to prove the contract was procured from defendant by plaintiff through fraudulent representations, and if such is found by the jury to be true and plaintiff thereafter placed it of record and thus necessiated expenditures on the part of defendant in employing counsel, the prosecution of a suit in equity and expenses to Boone county in attendance upon the trial, then she is entitled to recover on the counterclaim therefor, otherwise not.

Error inheres in other instructions for defendant as well but as the case is to be retried it is unncessary to discuss the instructions separately, for what has been said sufficiently indicates the proper theory to pursue. The judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* concurs. *Allen, J.,* having been of counsel, is not sitting.