CHARLES H. DOLAN *vs.* ALBERT THOMPSON & others.

Suffolk. March 11; October 16, 1878. — January 1, 1879.

A factor, who receives consignments of goods under an agreement by which he is to advance to his principal money from time to time as the latter requires, to charge him interest on the advances at a certain rate, to sell the goods consigned at the market price, to charge a certain commission for selling, and, after deducting advances, interest and commission, to pay the balance to the principal, and if, upon settlement, after all the goods are sold, a balance is found due the factor, the principal is to pay it, may, after having made large advances to the principal on account of goods not sold, and which have been on hand for several months, sue the principal for the amount of the advances already made, without waiting until all the goods are sold.

TORT for malicious prosecution. Writ dated February 20, 1875. Answer, a general denial.

At the trial in this court, before *Lord,* J., the plaintiff introduced in evidence a copy of the record of the action brought against him by the defendants, by which it appeared that the writ was dated March 5, 1874, returnable at April term 1874, that the declaration was on an account annexed for $2981.84, for money advanced, and that an attachment was made of his goods · that at July term 1874, an answer *puis darrein continuance* was filed alleging that since the commencement of the action the plaintiffs therein had sold property of the defendant to an amount greater than the amount of their advances to the defendant; that at January term 1875, the plaintiffs discontinued their action; and that judgment for costs was entered in favor of the defendant.

The plaintiff testified that, in the latter part of August or the early part of September 1873, he made an agreement with the defendants, by which he was to consign to them finished calfskins; and they agreed to advance him money thereon from time to time, as he required, to charge him interest at the rate of seven per cent per annum upon the money so advanced, to sell the skins so sent to them at the market price, to deduct five per cent commission from the amount of the sales for selling, and, after deducting their advances, interest and commissions, to pay the balance to the plaintiff; that if, upon settlement, after all were sold, a balance was found due the defendants, the plaintiff was to pay

it; that, under this agreement, the plaintiff sent a large quantity of finished skins to the defendants, and received advances on the same; that in December 1873, the defendants declined to make any further advances on skins at seven per cent interest, but said they would receive and sell his skins on commission; that thereupon the plaintiff consigned skins thereafter dressed to other persons, who made advances thereon; that on March 5, 1874, the plaintiff received from a firm of attorneys a letter requesting him to call and settle a demand in their office against him; that he immediately called upon them, when he was informed that an action had been brought against him by the defendants, and a keeper put in his factory; that he soon after obtained from the defendants an account showing that they claimed a balance due them, at the time the action was brought, of $2,981.84, for advances made on skins then held by them for sale; that, at the time said action was brought, the defendants had in their possession, unsold, a large quantity of skins sent them under the agreement, of the market value exceeding $6,000; that in March 1874, the defendants made further sales of the skins, amounting in all to $3,733.20, after the commencement and prior to the entry of said action; that afterwards the defendants sold the balance of the skins remaining in their hands, to the amount of $1,796.15, prior to judgment in said action; that, immediately after the plaintiff received notice of said action from the defendants' attorneys, he made arrangements for an advance of money with which to pay the amount claimed by the defendants, and went to them and requested them to deliver the skins remaining in their hands to the person who was to make the advance, and receive the amount due them, but they declined to receive the money or to allow him to remove the skins; that on March 14, 1874, he forbade the defendants to make further sales of the goods consigned to them; that the officer, by virtue of the writ in said action, removed the property of the plaintiff, and other property found in the plaintiff's factory, consisting of skins in the process of dressing, and in an unfinished condition, to the store of the defendants, which property there became heated, moulded and worthless; that the defendants, subsequently to October 6, 1874, the date of the last sale made by them, rendered an account to the plaintiff of all sales of skins sent them under the agreement,

showing a balance in the plaintiff's favor; and that the defendants never requested him to pay them any money, nor made any demand whatever upon him, until by the letter sent him by their attorneys, which was not received by him until the action had been brought and the attachment of his property made.

Upon this evidence, the judge ruled that the plaintiff could not recover; and directed a verdict for the defendants. The plaintiff alleged exceptions.

The case was argued in March 1878; and additional briefs were submitted to the whole court in the following October.

*I. W. Richardson & J. W. Keith,* for the plaintiff.

*R. M. Morse, Jr., (J. H. Hardy* with him,) for the defendants.

SOULE, J. The plaintiff cannot maintain his action unless the evidence would justify a finding by the jury that the suit which is charged to have been malicious was instituted without probable cause by the defendants. The plaintiff contends that, by the terms of the contract between the parties, the defendants were to wait till all the goods consigned to them had been sold, before calling on him for repayment of moneys advanced to him; and if this were so, it would be plain that there was no cause of action against him. But we do not so interpret the contract. The agreement was oral, and, as testified to, contains only a specification of certain of the rights and duties of principal and factor, and does not, in terms, nor by implication, take away from the factor any rights which he would have had but for the agreement. When it is intended to change, in any particular, the well established rights between such parties, it must be done by an agreement which clearly points to that result; otherwise, it will be presumed that their dealings are governed by the rules of law ordinarily applicable to dealings of that nature. Accordingly, the defendants, having advanced largely to the plaintiff on account of goods not sold, and which had been on hand for several months, were entitled to recover of the plaintiff the balance of account in their favor when the suit was begun. They had the right to look to the goods in their hands as security, and the further right, in the absence of an agreement to the contrary, to sue for the amount due them. *Beckwith* v. *Sibley,* 11 Pick. 482. *Upham* v. *Lefavour,* 11 Met. 174.          *Exceptions overruled.*