# BELLE STROTHER, Appellant, v. JOHN McFAR-LAND, Respondent.

### St. Louis Court of Appeals, July 2, 1912.

1. **EVIDENCE: Ownership: General Repute: Hearsay.** In an action for the conversion of a carriage, testimony that, according to general reputation, the carriage belonged to plaintiff's husband, was hearsay, and had no tendency to prove that plaintiff did not own the carriage, and hence it was error to admit it.

2. ————: **Reputation.** In an action against a tax collector for the conversion of plaintiff's property in payment of her husband's taxes, it was error to admit evidence that plaintiff and her husband were reputed to be tax dodgers.

3. **GIFTS: Inter Vivos: Delivery of Possession.** In order to constitute a gift *inter vivos*, delivery of possession is necessary.

4. **HUSBAND AND WIFE: Gifts: Delivery of Possession.** Where, during coverture, the husband purchases an article for his wife and delivery is made at their home, jointly occupied by them, such delivery is one of possession to the wife, sufficient to constitute a valid gift.

5. **INSTRUCTIONS: Not Supported by Evidence: Imputing Bad Faith.** Where, in an action against a tax collector for conversion of a wife's property for her husband's taxes, there was no evidence that the husband was claiming that she was the owner of the property in question or had any motive for so claiming, it was error to instruct that the jury could consider the motive which prompted the husband to claim that the property had been given to plaintiff, and whether the deal was in fact a *bona fide* gift or one merely in name, to prevent the payment of taxes.

6. ————: ————: ————. Instructions suggesting an imputation of bad faith in a party's conduct are always improper unless warranted by the evidence.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort, Judge.*

REVERSED AND REMANDED.

*C. G. Shepard* for appellant.

(1) The conduct of counsel for defendant was such that this case should be reversed for that reason alone, were there no other error in the case, for it is reversible error for counsel to continue asking prejudicial questions, even though the court sustains an objection thereto and prevent the answer going to the jury. Cases should be tried in court on their merits and not on insinuations, and innuendoes wrongfully injected therein by designing counsel; and where the complaining party has been injured by such conduct the appellate court will reverse a verdict wrenched from a jury by such methods. Gore v. Brockman, Mo. App. 119 S. W. 1082; State v. Teeter, 144 S. W. 445; Chenoweth v. Sutherland, 124 S. W. 1056. (2) The court committed reversible error in the line of testimony it permitted defendant to introduce over the objections of the plaintiff. Vermillion v. Parsons, 107 Mo. App. 192. (3) The husband has the right to give property to his wife, when the gift is not a fraud upon his creditors, and when the gift is once made the title vests in the wife and she is the absolute owner of the property so given, and such property cannot be seized for subsequently accrued debts of the husband. State ex rel. v. Jones, 83 Mo. App. 157; Bettes v. Magoon, 85 Mo. 586; McMunnigal v. Aylor, 204 Mo. 19.

*A. L. Oliver* and *Ward & Collins* for respondent.

(1) The trial court did not err in permitting defendant's attorney to ask questions to which objections were sustained. Bettes v. Magoon, 85 Mo. 587; 14 Am. & Eng. Ency. Law (2 Ed.), 1050; Holthaus v. Hornbostle, 60 Mo. 439. (2) Defendant contends that the statement on the part of J. D. Strothers, after the gift, was incompetent and should not have been admitted. It was competent, because J. D. Strothers was in possession of the carriage. Vermillion v. Par-

son, 107 Mo. App. 193. It was competent to show whether or not J. D. Strothers had intended to part with the title to this property. Thomas v. Thomas, 107 Mo. 459; In re Estate of Soulard, 141 Mo. 642. The requisites of a valid gift *inter vivos* are: (a) The gift must go into immediate and absolute effect. 14 Am. & Eng. Ency. Law (2 Ed.), 1015; Thomas v. Thomas, 107 Mo. 459; Vogel v. Gast, 20 Mo. App. 104. (b) The gift must be fully executed. 14 Am. & Eng. Ency. Law (2 Ed.), 1015; In re Estate of Soulard, 141 Mo. 642. (c) It is essential that the possession be delivered to the donee, either actual, symbolic or constructive. Am. & Eng. Ency. Law 1015; Vogel v. Gast, 20 Mo. App. 140; Nasse v. Thoman, 39 Mo. App. 178; Gartside v. Gartside, 45 Mo. App. 160; Banking Co. v. Miller, 190 Mo. 640. Therefore, from the above law, it was clearly competent to show the declarations of the donor, because he was in possession; it shows his intention was not to part with the title; gift not fully executed; and "Subsequent declarations of donor are admissible, not for the purpose of changing the character of the transaction, but of determining what the transaction was." 14 Am. & Eng. Ency. Law 1051.

NORTONI, J.—This is an action in trover as for conversion. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

Defendant is collector of the revenue of Pemiscot county and as such levied upon and sold a carriage as the property of Jefferson D. Strother for taxes owing by him. Plaintiff is the wife of Jefferson D. Strother and prosecutes this suit against the collector as for a conversion of the carriage, which it is said belonged to her, and not to her husband, for the satisfaction of whose taxes it was sold. The evidence for plaintiff tended to prove that she owned a carriage prior to this one and that her husband, who is a mill man, drove the carriage to his sawmill and kept it there un-

til it was practically destroyed. Because of this he promised to buy her a new one. Thereafter he instructed the dealer to furnish Mrs. Strother with such carriage as she might choose and that he would pay for the same to replace her carriage theretofore destroyed. Plaintiff selected the carriage from a catalog exhibited to her by the dealer, and it was ordered for her in accordance with Mr. Strother's instructions. Upon the arrival of the carriage at Caruthersville, where the parties resided, Mr. Strother caused a team of horses to be hitched thereto and the carriage driven and delivered at the residence occupied by himself and wife. Mr. Strother paid for the carriage with his own means, but according to the evidence of both the dealer and Mrs. Strother, the purchase was made for Mrs. Strother. It appears that Mrs. Strother always claimed the carriage and exercised acts of ownership over it for about three years, that is, from the date of its purchase until levied upon and sold by defendant. The evidence tends to prove that when neighbors sought to borrow the carriage, application was made to Mrs. Strother, to that end, and that her husband made no claim thereto.

The issue in the case was as to whether or not plaintiff or her husband owned the carriage, and it was pertaining to this the proof was directed by either party. Concerning the reception of proof with respect to this matter, the record abounds with error, for it seems the court admitted all manner of testimony in aid of defendant. A goodly portion of this testimony was subsequently withdrawn, on plaintiff's motion, by an oral instruction to the jury, but enough remains in the record to justify the reversal of the judgment on that ground alone. For instance, several witnesses were permitted to testify, over the objection and exception of plaintiff's counsel, that according to general reputation the carriage belonged to Jefferson D. Strother, plaintiff's husband. Touching this matter,

one witness said, "When I heard anything said about it, it was generally known as Jeff's black 'Mariar.'" Obviously all of this testimony is incompetent, for none of it was traceable to admissions by plaintiff. It amounted to no more than rumor and hearsay and did not even tend to prove that plaintiff did not own the carriage. Another witness was permitted to testify, over plaintiff's objection and exception, that plaintiff and her husband were reputed to be "tax dodgers, etc." It is obvious that this evidence was introduced for no other purpose than to prejudice the jury and confuse the issue, to the end of preventing a fair trial. It was clearly improper. It is true the court thereafter struck out a portion of this evidence, but from reading the record it is entirely clear that all of it was not stricken therefrom. The court's ruling touching this matter is involved in the following words and limited accordingly: "The Court: That part will be stricken from the record in regard to the taxes, that the collector told him about."

It appears that plaintiff owned the residence property and the place where the carriage was kept, but she and her husband occupied the residence together with their family. Plaintiff testified that her husband did not make any "formal presentation" to her of the carriage at the time it was purchased, but merely purchased it for her in lieu of the one which she had theretofore owned and which he had destroyed. As before said, Mr. Strother instructed the dealer to provide Mrs. Strother with such a carriage as she might select and he would pay for the same. Both plaintiff and Mr. Darrow, the dealer, testified expressly that the carriage was purchased for Mrs. Strother. Of course, Strother himself was not a witness because of the inhibition of the statute, his wife being a party to the suit. Darrow, the dealer, says Strother told him he was buying the carriage for his wife and continues, "In fact, he had me take the catalog to his wife

to select it, and I left it there for a day or more." It appears that Mrs. Strother selected the carriage and the purchase was thereafter consummated by Mr. Strother who paid for the same.

On the theory that the subject-matter involved a gift *inter vivos,* which, of course, requires a delivery of possession, there is a considerable contention throughout the case that the gift of the carriage to Mrs. Strother is ineffective because no actual delivery thereof took place. Touching upon this matter, plaintiff requested the court to instruct the jury as follows, but it declined to do so: "The court instructs the jury, that if you believe and find from the evidence that J. D. Strother, the husband of plaintiff, purchased the carriage in question for plaintiff then in contemplation of law the husband never had possession of said carriage, but both the title and possession passes to the plaintiff at the time of the purchase. In such case no delivery, symbolical or actual, is necessary." This instruction is a proper declaration of the law upon the particular facts of the case, and it should have been given. In those cases where, during coverture, the husband purchases an article for the wife and the delivery is made under the purchase at their home, jointly occupied, as here, the law regards such delivery as one of possession to the wife in accordance with the obvious intention of the parties and proceeds as though such possession was never with the husband; for, obviously, in such circumstances, if the husband be regarded as having possession at all, it could have been taken by him only in behalf of his wife. [See authorities in point: Schooler v. Schooler, 18 Mo. App. 69, 77; Wheeler v. Wheeler, 43 Conn. 503.] By no other instruction given in the case was this question fairly presented to the jury and the court therefore erred in refusing to give the instruction above copied.

Among others, the court gave the following in

struction for defendant: "The court further instructs
you that the question for you to determine in this case
is whether the carriage in controversy, at the time it
was sold by the defendant, was the property of the
plaintiff or her husband, Jeff Strother, and in deter-
mining that question you are instructed that the bur-
den of proof is upon the plaintiff to show that the
property was hers at said time, and you will take into
consideration all the facts and circumstances detailed
in evidence in this case as who paid for the property,
the relation of the plaintiff and Jeff Strother as hus-
band and wife; their acts and conduct concerning the
property, the use to which the property was put, to-
gether with the motive which prompted said Jeff
Strother to claim that said property had been given
to plaintiff, whether such deal was in fact a *bona fide*
gift or one merely in name to prevent the payment of
his taxes and if after a full and fair consideration of
all the facts and circumstances in this case you are
convinced that said purported gift was made for the
purpose of defeating the payment of the taxes of said
Jeff Strother, then said purported gift cannot avail
in this case and you will find for the defendant."
Much of this instruction is well enough, but that por-
tion telling the jury they should consider "the motive
which prompted said Jeff Strother to claim that said
property had been given to plaintiff, whether such
deal was in fact a *bona fide* gift or one merely in name
to prevent the payment of taxes, etc," and referring
to the gift as a "purported" gift is to be condemned
as assuming that Jeff Strother was making some claim
that the carriage belonged to his wife and that he had
a motive for doing so. Then, too, as to this matter,
the instruction is suggestive of bad faith on the part
of plaintiff and her husband. There is not a scintilla
of evidence in the case that Jefferson Strother, plain-
tiff's husband, made any claim that the carriage be-
longed to his wife either at the time or subsequent to

the levy thereon. Indeed, nothing whatever appears as to Jefferson Strother in the case except that he purchased the carriage three years before for his wife, and there is no proof that he had any motive at the time for conferring title upon her except to perform the kindly office of a husband in replacing her prior carriage. The instruction proceeds as though there is some evidence in the case suggesting a motive which prompted Jefferson Strother to claim the carriage had been given to his wife and that this motive was traceable to his non-payment of taxes for which the levy was made. There is no suggestion in the record that Strother was insolvent at the time the carriage was purchased for his wife three years before and that he sought thereby to place it beyond the reach of creditors. When we view all of the facts in evidence, this instruction seems to contain a suggestion of bad faith between plaintiff and her husband in connection with plaintiff's right to the carriage when the evidence reveals none. Instructions suggesting an imputation of bad faith in the conduct of a party are always improper unless warranted by the proof in the case. [See Beauchamps v. Higgins, 20 Mo. App. 514; Sallee v. McMurry, 113 Mo. App. 253, 270, 88 S. W. 157.]

Because of the errors above pointed out, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.