## TUNSTILL *v.* J. T. FARGASON COMPANY.

### Opinion delivered January 22, 1923.

1. FACTORS—RIGHT OF ACTION AGAINST PRINCIPAL.—Evidence *held* sufficient to establish the relation of debtor and creditor between a factor and his principal, so that a suit on the indebtedness was not premature, even if the rule that a principal owes no debt to the factor except for the balance due after sale of the goods were adopted.

2. FACTOR—DUTY TO ACCOUNT TO PRINCIPAL.—A factor cannot maintain an action against his principal without accounting for all of the goods shipped to the factor.

3. FRAUDULENT CONVEYANCES—EVIDENCE.—Evidence *held* to sustain a finding that a debtor's conveyance of all of his property to his wife for a nominal consideration was in fraud of his creditors.

4. FACTORS—NOTICE THAT PRINCIPAL WAS ACTING AS AGENT.—In an action by a factor to recover advancements made to his prin-

cipal upon drafts drawn in the principal's name and attached to bills of lading covering shipments in his name, evidence *held* to sustain the chancellor's finding that the factor and the bank which cashed the drafts had no knowledge that the principal was acting merely as agent for others.

Appeal from Poinsett Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

*John W. Scobey,* for appellant.

The relation of debtor does not exist until after the goods held by the factor has been disposed of and applied to a payment of advances. 3 A. L. R. 287; 5 L. R. A. (N. S.) 1147; 214 Pa. 258; 63 Atl. Rep. 745. Proof of the insolvency of the defendant should have been proved. 66 Ark. 486.

*Cooley & Adams,* for appellee.

While the lien attaches, he does not have to pursue that remedy; he may maintain an action against the principal before the lien attaches. 60 Ark. 357; 117 Ark. 180; 134 Ark. 580; 11 R. C. L. p. 774, § 28. The fact that somebody offered thirty cents for the cotton at Lepanto does not establish its market value in Memphis. By shipping the cotton he tacitly agreed to be bound by the Memphis market. 78 Ark. 402; 11 R. C. L. p. 766, sec. 17; 25 C. J. pp. 357-358, § 33. Conveyances made to members of a household and near relatives of an embarrassed debtor are looked upon with suspicion, and scrutinized with care. 74 Ark. 174; 133 Ark. 250; 134 Ark. 241; 136 Ark. 115.

Wood, J. This action was begun by the appellee in the circuit court against the appellant to recover the sum of $1,448 alleged to be due the appellee for money advanced to O. L. Tunstill and to set aside a conveyance executed on January 6, 1921, from Tunstill to his wife, which, it is alleged, was made to defraud the creditors of Tunstill. All of the material allegations of the complaint were denied by the appellant, and they set up that the real estate conveyed was the homestead of appellants, and that the cotton shipped by Tunstill to the appellee was

owned by others, and that the credit extended by the appellee to Tunstill was upon the value of the cotton at the time and not to Tunstill. On motion of the appellee, and over the objection of appellants, the cause was transferred to the chancery court.

The testimony adduced by the appellee tended to prove that the appellee is a corporation engaged in the business of cotton factors at Memphis, Tennessee. Tunstill shipped cotton to the appellee for sale, and drew against it. It was the custom of appellee, as factor, to advance money against cotton shipped to it. Tunstill shipped to the appellee nine bales of cotton and drew on the appellee in favor of the First National Bank of Lepanto, during the month of January, 1920, for sums amounting in the aggregate to $1,275, which amounts were paid to appellee.

At the time the cotton was shipped and the drafts of Tunstill were paid, the appellee had no knowledge of the fact that the cotton did not belong to Tunstill. Appellee knew, in a general way, that Tunstill was rated as a fair man. "It considered him a reliable, straightforward sort of man, and the cotton that he shipped in at the time was also an additional security." Appellee thought it was safe in making him the advance, whether the cotton paid the account or not. It extended credit both on the security of the cotton and the personal standing and financial responsibility of Tunstill. The manner of dealing with Tunstill was the usual one for cotton factors like the appellee. The appellee sold one bale of the cotton February 2, 1921, for five cents per pound, realizing the sum of $20.04, and sent Tunstill notice of the sale. On February 16, 1921, he replied that he did not want any more of the cotton sold at such price. On February 19, 1921, the appellee wrote to Tunstill telling him that his cotton was of a class that it would be almost impossible to dispose of it, calling his attention to the condition of the world market, and suggesting that it would be a better policy "to realize whatever possible

on this cotton of extremely low grade, and not to be particular about the price." Tunstill made no reply to this letter. On May 14, 1921, appellee sold three more of the bales of cotton at the sum of $54.27. The four bales of cotton brought the sum of $74.31. The account of Tunstill with appellee was made up of the advances and interest thereon at the rate of eight per cent. per annum, freight and charges, and the sum of $40 advanced to Cooley & Adams as lawyers' fee and court costs, which, after deducting the sum of $74.31, left the sum of $1,548.99 the amount claimed to be due the appellee. The testimony on behalf of the appellee further tended to prove that this cotton was of such a low grade that there had been demand for it only at five and six cents, and some cotton of such low grade had sold for three cents.

The uncontroverted testimony on behalf of the appellants was to the effect that Tunstill did not own the cotton shipped to appellee and had no interest in it. It was in his name, but was owned by one T. E. Maynard and one E. C. Taylor. They owned the cotton, and Tunstill shipped it in his name to accommodate them. They received from Tunstill the money on the drafts drawn by Tunstill on the appellee in favor of the Bank of Lepanto. The appellant did not get the money. It came in his name, but the owners of the cotton received it. The owners went to the Bank of Lepanto, presented the bill of lading with the draft attached, and the bank paid the money to Tunstill, and Tunstill paid it over to the owners of the cotton. There was testimony on behalf of the appellants tending to prove that the owners of the cotton were offered thirty cents a pound for the cotton in Lepanto before shipping it, which they refused.

The cashier of the First National Bank of Lepanto testified to the effect that the appellee honored drafts drawn by anybody against cotton that was recommended by the First National Bank of Lepanto, and that, if this cotton had been shipped in the name of the owners, drafts

would have been paid anywhere from $75 to $125 each per bale. This witness, on cross-examination, testified that Tunstill was good for any financial obligations he incurred. He had been in Lepanto a long time, and witness would not say that Fargason Company did not know his standing.

There was testimony on behalf of the appellee tending to show that the value of the real estate conveyed by Tunstill to his wife was from $1,000 to $2,500. The consideration named in the deed conveying the property was $1. After the institution of the suit, on the petition of the appellee, the remaining cotton in appellee's hands was sold by order of the court.

The above are substantially the facts from which the court found that Tunstill was indebted to the appellee in the principal sum of $1,184.34. The court further found that the conveyance of the real estate from Tunstill to his wife was fraudulent and void. The court rendered a decree in favor of the appellee in the sum of $1,184.34, and directed that, unless the same be paid within sixty days from the date of the judgment, the real estate described in the conveyance and set forth in the decree be sold to satisfy the decree. From this decree appellants prosecute this appeal.

1. The appellants contend that the suit was prematurely brought on the ground that the relation of debtor and creditor did not exist between Tunstill and the appellee; that the relation was only that of shipper and factor; and that under such relation no action could be instituted until all the cotton in the hands of the appellee had been disposed of and the proceeds thereof applied as a credit on the amount advanced. To sustain their contention, appellants cite the cases of *Newberger Morris Co. v. Talcott,* 219 N. Y. 505, 114 N. E. 846, 3 A. L. R. 287, and *Re Jos. D. Murphy Co.,* 214 Pa. 258, 5 L. R. A. (N. S.) 1147. In the New York case it is said: "The rule in this State is that, in the absence of some agreement to the contrary, the consigned goods are the primary

fund to which a factor must look for reimbursement.''
And in the Pennsylvania case it is held that an agreement by which goods are consigned for sale to persons who are to make advances on the consignment and hold the goods as collateral against the advances does not render the consignor a debtor for the amount of the advances before sale of the goods, but only for the balance unpaid from the proceeds of the sale. Even if it be conceded that the rule is as announced by the Court of Appeals of New York or the Supreme Court of Pennsylvania, still the facts which the preponderance of the evidence tend to prove in the instant case would clearly differentiate it from those cases. Here the chancery court was justified in finding that the appellee made the advances to Tunstill on his financial standing and personal credit as well as on the cotton shipped by him. The testimony for the appellee, which was undisputed by the appellants, shows that, after the sale of the first bale of the cotton, and after Tunstill had objected to a further sale of the cotton by the appellee at such price, the appellee rendered to Tunstill a statement of his account, showing a debit balance, and requested him to settle the same by a note secured by real estate or personal indorsement.

Furthermore, the undisputed testimony of the appellee was to the effect that Tunstill, long before this suit was instituted, acknowledged his indebtedness to the appellee, and offered to pay the same. At one time he offered to pay $300 and allow the appellee to sell the cotton, and offered to give his personal security for the remainder. At another time he offered to give his note for $500 for security and let the cotton stand for the balance. The testimony in the record fully warranted the court in finding that Tunstill, before this suit was instituted, acknowledged that he was indebted to the appellee for the advancements it had made to him, and that the proceeds of the sale of the cotton he had shipped to the appellee would not be sufficient to liquidate. Even if the New

York or Pennsylvania rule applies, under the facts of this record the trial court was fully justified in finding that at the time of the institution of this action the relation of debtor and creditor existed between Tunstill and the appellee. Tunstill refused to settle the amount of his indebtedness, the correctness of which he did not dispute, and virtually acknowledged, as we have stated, that the appellee could not reimburse itself from the proceeds of the sale of the cotton. Therefore the relation of debtor and creditor did exist between the appellee and Tunstill at the time of the institution of this action, and such action was not premature.

"But it has been held that, unless there is an agreement to the contrary, a factor who makes advances on goods consigned to him may maintain an action against his principal personally before the goods are sold, upon the ground that, where an advance is made to the principal, the factor becomes the creditor of his principal and holds as collateral, for the sum or sums due him, the goods which are consigned." Note to *Estate of Murphy*, 6 Ann. Cases, p. 311; *Upham* v. *Lefavour*, 11 Metcalf (Mass.) 174, and other cases there cited; *Beckwith* v. *Sibley*, 11 Pick. (Mass.) 482; see also *Doran* v. *Thompson*, 126 Mass. 183, and other authorities cited in note. But, to be sure, "in any jurisdiction the factor cannot maintain an action for his advances without accounting for or showing what has become of the principal's goods." 19 Cyc. 165. See *Mertens* v. *Nottlebohms*, 4 Gratt. (Va.) 163. The appellee fully accounts for the cotton consigned to it.

2. The appellants contend that the action to set aside the fraudulent conveyance cannot be maintained because there was no proof of the insolvency of Tunstill. Two witnesses testified as to the value of the property conveyed by Tunstill to his wife. One of them was on the assessment board, and stated that he knew Tunstill well, and that he knew of no other property owned or controlled by Tunstill except that described in

the conveyance to his wife. The other witness testified that he was familiar with property values in Lepanto, and was familiar with the property described in the conveyance, and that it was not worth more than $2,700; that Tunstill did not own any other property that he knew of.

It occurs to us that this testimony was sufficient to warrant the trial court in finding that Tunstill was insolvent. That is to say, after conveying the property described in the deed, he was wholly unable to pay the debt due the appellee. The deed was executed upon the nominal consideration of $1. At the time the conveyance was made Tunstill was indebted to the appellee in a sum which the latter claimed to be over $1,500, which sum Tunstill has not challenged by his evidence and does not dispute in his brief, his only contention as to this being that he was not insolvent. The court was warranted in finding that Tunstill was in debt in a large amount to the appellee, and that this conveyance would render him utterly unable to pay this debt. There was ample testimony to justify the court in finding that the conveyance from Tunstill to his wife was a voluntary conveyance and made to defraud creditors. See *Howard* v. *Howard,* 152 Ark. 387; *Harteman* v. *Lafargue,* 140 Ark. 563; *Quisenberry* v. *Davis,* 136 Ark. 115, 122; *Harris* v. *Smith,* 133 Ark. 250; *Wilkes* v. *Vaughan,* 74 Ark. 124.

3. Appellants contend that Tunstill was only acting in the capacity of agent for Maynard and Taylor in shipping the cotton, and that the First National Bank of Lepanto was the agent of the appellee, and that the bank had knowledge that the cotton belonged to Maynard and Taylor, and that the knowledge of the bank was the knowledge of the appellee. This contention does not find any support in the testimony. At least the finding of the trial court to the contrary was not clearly against the preponderance of the evidence. In his dealings with the appellee with reference to the cotton, Tunstill certainly treated the same as his own. We do not find anything in the record to justify the conclusion that the

bank, knew, or had notice of such facts as would bring home to it knowledge, that Tunstill was acting as the agent of others. The cotton was shipped in his name, and the drafts were drawn by him in favor of the bank, and the money was paid over to him, and was by him paid to Maynard and Taylor, the owners of the cotton. But this did not charge appellee or the bank with knowledge that Maynard and Taylor owned the cotton. On the contrary, practically the undisputed evidence shows that Tunstill, all the way through the transactions, dealt with the appellee and the bank as if he were the owner of the cotton. He did not disclose the fact that he was acting as the agent of Maynard and Taylor until after the institution of this suit.

These were issues of fact which the trial court resolved in favor of the appellee, and its finding is sustained by preponderance of the evidence. The decree of the chancery court is in all things correct, and it is therefore affirmed.