BAILEY-BALL-PUMPHREY COMPANY, a Corporation, Appellant, v. J. E. GERMAN, Respondent.

Springfield Court of Appeals, January 29, 1923.

1. **EVIDENCE: Consignor Suing Cotton Factor for Failure to Sell May not Show Others Were Induced by Other Solicitors to Consign to Such Factor.** Permitting defendant, who filed a counterclaim for damages for failure of plaintiff to sell cotton as directed, in action by cotton factor to recover an advancement and expenses on cotton consigned to it by defendant, to prove that another solicitor of plaintiff induced others to ship their cotton to plaintiff and allowing them to detail statements made by that solicitor was erroneous, having no connection with the transaction between plaintiff and defendant.

2. ———: **Testimony as to Market Value of Cotton Confined to Place at Which it Was to be Sold.** Permitting defendant to show market value of cotton similar to his at the place where it was produced,

about the time and shortly after time of shipment, was error; evidence as to the market price and all other facts relating to the sale of cotton similar to that sent by defendant to plaintiff should be confined to the place at which it was to be sold.

3. ———: Consignor Suing Factor for Failure to Sell May, on Question of Negligence, Show Transactions of Others. It was competent for defendant, filing counterclaim for damages for failure of plaintiff to sell cotton consigned to it by him to sell at Memphis, and having the burden of showing that plaintiff had been negligent in not selling his cotton, to show that similar cotton to his had been shipped to other commission men at Memphis about the same time by other parties, and had been sold, since what plaintiff did being peculiarly within its own knowledge, defendant should be allowed a wide range in his efforts to show what plaintiff might have done in disposing of his cotton.

4. COTTON FACTORS: Consignor Recovering for Failure to Sell, to be Charged with Value of Goods. Defendant, if prevailing on his counterclaim for damages for failure of plaintiff to sell cotton consigned to it, and the cotton is not sold at that time, should be charged with the then value of the cotton at Memphis.

5. ———: Advancement not an Advance Payment. An advancement by a cotton factor is not in the nature of an advance payment, with the result of precluding him from recovery except from proceeds of a sale of the goods.

6. ———: Must Look in First Instance to Goods for Reimbursement for Advances, in Absence of Special Agreement. On a general consignment with no special agreement to a factor, he must in the first instance look to the goods for re-imbursement for advances and expenses, and cannot resort to a personal action therefor against the consignor until after the lapse of a reasonable time after the consignment, during which time he must make diligent effort to sell the goods, and must show that his failure to sell at all, or at a price satisfactory to the consignor, was not his fault.

7. RECOVERY FOR ADVANCEMENT, WHERE GOODS HAVE NOT BEEN SOLD. A cotton factor cannot recover for advances, where the goods have not been sold, unless ready to terminate the agency and surrender the goods.

8. DAMAGES: Not Liable for Failure to Sell until Consignor is Ready to Retake Goods. The consignor cannot recover damages of a factor for failure to sell unless ready and offering to retake the goods and relieve the factor from further responsibility.

Appeal from Circuit Court of Dunklin County.—*Hon. W. S. C. Walker,* Judge.

REVERSED AND REMANDED.

*Shepard & Hawkins* for appellant.

No brief for respondent.

COX, P. J.—Plaintiff is a cotton factor in Memphis, Tennessee, and brought this suit to recover an advancement and expenses on cotton consigned to it by defendant. Defendant filed a counterclaim for damages for failure of plaintiff to sell the cotton as directed. Trial by jury and verdict against plaintiff on its cause of action and in favor of defendant on his counterclaim for $750. Plaintiff appealed.

Defendant is a farmer in Pemiscot County and on January 12, 1920, a solicitor of plaintiff induced him to ship ten bales of cotton to plaintiff at Memphis, Tenn., to be sold on commission. Plaintiff advanced $1500 on the cotton and incurred some expenses for freight, storage and insurance. The cotton was not sold and in the fall of 1920 plaintiff asked defendant to execute a note for the advancement and expenses which defendant refused to do. Plaintiff also claimed that it tendered back the cotton but this is denied by defendant. At the trial, the plaintiff made tender of the cotton in open court but defendant refused to accept it. This suit was filed January 14, 1920. The defendant counterclaimed for damages for neglect of plaintiff in not selling the cotton. The verdict of the jury recited that the jury found against plaintiff on its cause of action on the sole ground that its cause of action did not mature until the cotton was sold and that they found for defendant on his counterclaim for $750.

In the progress of the trial, the defendant was permitted, over the objection of plaintiff to prove that other parties in Pemiscot County had been induced by another

solicitor of plaintiff to ship their cotton to plaintiff and witnesses were allowed to detail statements made by that solicitor to those other parties in making the solicitation. That had no connection with the transaction between plaintiff and defendant and its admission was clearly erroneous.

Defendant was also permitted to show the market value of cotton similar to his in Pemiscot County, Missouri, where the cotton was produced about the time and shortly after this cotton was shipped to plaintiff. This was also erroneous. The cotton was shipped to plaintiff at Memphis, Tenn., to be sold on the market there and the evidence as to the market price and all other facts relating to the sale of cotton similar to that sent by defendant to plaintiff should have been confined to Memphis. The error in the admission of testimony will necessitate a reversal of the judgment.

Defendant was permitted over the objection of plaintiff to show that other parties had shipped cotton similar to his to other commission men at Memphis about the same time his was shipped to plaintiff and that their cotton had been sold on the Memphis market while defendant's cotton was being held by plaintiff. We think this testimony was competent. Defendant carried the burden of showing that plaintiff had been negligent in not selling his cotton. It is apparent that defendant could not follow plaintiff's agents and trace in detail their conduct in relation to his cotton and since what was done by plaintiff was peculiarly within its own knowledge, the defendant should be allowed a wide range in his efforts to show what plaintiff might have done in disposing of his cotton.

The instructions in this case are numerous and very lengthy and since the case is to go back for new trial, we shall not discuss them in detail but shall give our views of the law applicable to this case and leave it to the court at the next trial to follow it without suggesting the form of instructions to be given the jury. We might state, however, that upon a re-trial, if the jury should find for

defendant on his counterclaim and the cotton is not sold at that time, the defendant should be charged with the then value of the cotton at Memphis, if it is shown to have any value.

This case is unusual in that suit for money advanced and expenses incurred by the factor was brought before the goods were sold. Some courts of high standing have held that in the absence of a special agreement, such a suit cannot be maintained. [Newberger Morris Co. v. Talcott (N. Y. App.), 114 N. E. 846; In re matter of Murphy, 214 Pa. 258, 63 Atl. 745; Balderston v. National Rubber Co., 18 R. I. 338, 27 Atl. 507.] Other courts of equal standing have held that such a suit may be maintained. [Dolan v. Thompson, 126 Mass. 183, and cases there cited.]

The authorities generally agree that the consignor is personally liable to the factor but those courts which hold that a factor cannot maintain a suit for money advanced until after he has sold the goods place it on the ground that having advanced the money with a view to securing the right to sell the goods on commission, he thereby impliedly agreed to wait until the goods were sold before asking re-imbursement. The courts holding otherwise place their conclusion upon the ground that when the money was advanced, it established the relation of debtor and creditor between the consignor and the factor and hence in the absence of an agreement otherwise, the factor could demand re-imbursement at any time. It is intimated in Balderston v. National Rubber Company, supra, and some other cases that an advancement by the factor is in the nature of an advance payment and cannot be recovered at all except from the proceeds of a sale of the goods and if the goods cannot be sold for enough to re-imburse the factor, he must lose it. To this latter conclusion, we cannot give our assent. The factor who makes an advancement does not buy the goods and we know of no principle of law or justice that will place him in the attitude of having partly paid for

goods he did not purchase. [Bailey-Ball Pumphrey Co. v. Branham, 236 S. W. 379.]

We think the correct rule on a general consignment with no special agreement, and the one most in harmony with the spirit of fairness and right between the parties, is, that the factor must look to the goods for re-imburse-ment in the first instance and cannot resort to a personal action against the consignor until after the lapse of a reasonable time after the consignment, during which time he must make diligent effort to sell the goods. If he continues such effort for a reasonable time and is unable to sell at all, or is unable to sell at a price satisfactory to the consignor, he should then be permitted to demand re-imbursement without waiting longer. He should, of course, be required to show that the failure to sell was not his fault; that he had made diligent effort to sell but had been unable to do so. To us it seems unreasonable to assume that in the absence of any agreement on the question, the parties understood at the time of the consignment and advancement that the consignor should be under no obligation to repay the advancement made by the factor until the goods were sold no matter how long that might require. Such a rule requires the broker to take all the chances of a falling or decadent market and releases the consignor of all responsibility. The authorities all agree that if the market declines to such an extent that the goods are not sufficient security to the factor for the advancement, he may, if not himself at fault, demand additional security or a partial repayment sufficient to make him secure. If the goods are destroyed without the fault of the factor, he may recover his advancement and the owner must lose the goods. If the market should become so glutted that a sale should become impossible and if, for any reason, the factor by the use of diligent effort is unable to make a sale of the goods and he must wait indefinitely and possibly never be able to make a sale, the result to him is the same as if the goods had been destroyed and he should have the same remedy. All persons must know that the market

may fluctuate and for various reasons the conditions may become such that a sale of the goods at any price may for a long time be impossible and with this knowledge it is not reasonable to suppose that either the consignor or the factor understood that there should, under no circumstances, be any liability for a repayment of the advancements until the goods were sold, but it is fair to assume that they understood that settlement might be made after diligent effort had been made for a reasonable time to sell the goods.

In the case of Frothingham v. Everton, 12 N. H. 239, which is usually cited as holding that a suit for advancements cannot be maintained until after the sale of the goods, we find this language:

"No particular agreement is stated to have been made respecting the re-payment of these sums when they were advanced by the plaintiffs and it may be taken, therefore, that it was in the contemplation of both parties that the plaintiffs were to be re-imbursed out of the sale of the goods upon which the advancements were made if sufficient should be realized—that a credit was given to the defendant until the sale should be made *or until a reasonable time had lapsed in which the plaintiff might endeavor to make a sale*—but that plaintiffs could not immediately upon furnishing money have commenced a suit against the defendant for its recovery." (The italics are ours.)

In our view the consignor, when an advancement is made to him by the factor, becomes a debtor to the factor but not in the sense that immediate repayment may be enforced. The factor must make diligent effort for a reasonable time to make the sale, but if after such effort a sale cannot be made, then he may, if he so desires, tender back the goods and demand a re-payment of the advances made on them. If however the factor is in default, if he has not faithfully and with reasonable efficiency discharged his obligation to the consignor, then he cannot demand re-payment until he does sell the goods or is able to show that they cannot be sold at all. He

cannot demand re-payment until he is in position to terminate the agency and make final settlement with the consignor, but when he attains that position, then settlement may be made even though the goods have not been sold. The consignor sustains relatively the same position. If he contends that the factor has been derelict and wishes to recover damages, he must also be in position to make final settlement with the factor at the time of demanding the damages. It would be manifestly unfair to permit the factor to recover his advancements and expenses and at the same time, without the consent of the consignor, retain the goods in the hope of making a sale sometime in the future and secure a commission therefor. It would be equally unfair to permit the consignor to recover damages and at the same time compel the factor, against his will, to retain the goods and continue the effort to sell and incur the risk of becoming liable for other damages to accrue in the future. Therefore, if the consignor asks damages before the goods are sold, he must at the same time offer to retake the goods, if they are then of any value, and relieve the factor from further responsibility.

From what we have said it follows that if plaintiff has faithfully discharged its duty to the defendant, it may, on tender of the goods, recover its advancements and expenses, but if it is in default in any way, then it cannot without the consent of defendant return the goods and recover for its outlay unless it be shown that the goods cannot be sold at any price. It must either show a full performance on its part without a sale of the cotton or it must sell the cotton or show that it could not be sold before it can be in position to make final settlement with defendant and enforce a return of its advancements and expenses.

If it should develop that conditions have become such that the cotton cannot be sold for any price, plaintiff may still recover for its advancements and expenses because, if the cotton cannot be sold at all, the agency is necessarily ended. If however, plaintiff should re-

cover on the theory that the cotton cannot be sold at all, then, if defendant insists on his counterclaim plaintiff must answer for all damages, if any, caused by its negligence. Likewise the defendant before he can recover for damages must be in position to make final settlement with plaintiff, and to do that, he must either take back or offer to take back the cotton or he must insist that the plaintiff sell it if it can be sold, and until he receives or offers to receive back the cotton or it is sold or it is shown that it cannot be sold, he cannot recover damages.

If upon a retrial, the plaintiff stands on the ground that it has fully performed by making diligent effort for a reasonable time to sell and being unable to do so and tenders back the cotton, the defendant will have the option to accept the cotton or show that it is now worthless, which he may do without waiving his right to insist upon damages, and then try out his counterclaim for damages, or if the cotton has not become worthless and can now be sold for any price, he may stand upon his denial and try thereby to defeat plaintiff's cause of action because prematurely brought. He cannot refuse to take back the cotton, if of any value, and at the same time recover damages for failure to sell it. If plaintiff must retain the cotton and sell it before he can recover, then when the sale is made the price secured may be such that defendant will be benefited instead of being damaged.

Plaintiff cannot recover for advancements and expenses nor can defendant recover for damages until the relation of principal and agent between them is ready to be severed and they are ready to make final settlement.

For the errors noted the judgment will be reversed and the cause remanded. *Farrington* and *Bradley, JJ.*, concur.