**MOON DISTRIBUTING COMPANY, a
Corporation, Appellant,**

**v.**

**John R. MARABLE, Jr., Respondent.**

**No. 7429.**

Springfield Court of Appeals.
Missouri.

Feb. 28, 1956.

Finch, Finch & Knehans, Cape Girardeau, for appellant.

Joslyn & Joslyn, Charleston, for respondent.

McDOWELL, Presiding Judge.

This appeal is from a judgment in favor of defendant rendered in the Circuit Court of Scott County, Missouri.

The cause originated by plaintiff filing an amended petition in the Circuit Court of Mississippi County, Missouri, seeking judgment against defendant on open account in the amount of $545.35.

The amended petition alleged that defendant was the sole owner and operator of a retail package liquor store in premises known as "The Cellar" located in the Russell Hotel, Charleston, Missouri; that defendant made application for an original package liquor license and under oath represented himself to be the sole owner and operator of said business, pursuant to which a license was duly issued to the defendant and such license with defendant's picture was publicly displayed on the premises; that plaintiff had notice of such application and· of the statements and representations made by defendant under oath, and of the issuance of said license, prior to the date the first items of account were sold; that plaintiff extended credit to defendant relying on the aforesaid, and, therefore, defendant is estopped from denying he is the sole owner and operator of the business and estopped from denying that plaintiff extended credit to the defendant in reliance thereon; that defendant caused, allowed and permitted George Marable to operate the business under defendant's license and in his name and on his behalf as agent and employee of the defendant, and that defendant held out the said George Marable as such to the plaintiff and to the public generally, and in reliance thereon plaintiff accepted orders from George Marable as representative and agent of defendant and plaintiff extended credit to the defendant in reliance thereon; that as a result thereof, the defendant is estopped from claiming that George Marable was the owner and operator of the business and defendant is estopped from denying that George Marable was acting as defendant's representative and agent.

The answer is a general denial; a plea that plaintiff knew that defendant had no interest in the business and no intention of being bound in any transactions between plaintiff and George Marable; that the only reason plaintiff shipped the goods in the name of John Marable was to comply with the law. Defendant denied that the liquor was sold on defendant's credit and pleaded that defendant at no time was ever asked to pay the bill and that by plaintiff's actions, defendant was led to believe that it was relying upon the credit of George Marable.

The reply was a general denial of new matter alleged in the answer.

Upon application for change of venue this cause was transferred to Scott County, tried by jury resulting in a verdict and judgment for defendant. Plaintiff appealed.

Plaintiff's evidence shows that in order to secure a license from the Department of Liquor Control, one must make a verified

application, accompanied by his photograph, stating he is the sole owner and operator of the business. George J. Liebig, supervisor for the Department of Liquor Control, testified he was acquainted with George Marable and since 1943 or '44, had, on occasions, visited "The Cellar"; that George Marable operated the business and he did not know John Marable, defendant. He testified that he worked in 19 counties in southeast Missouri and that on many occasions he knew that licenses had been revoked and obtained in some other name and the business operated by the same people who had operated it before.

James H. Logan, vice-president and credit manager of plaintiff, testified he had been connected with plaintiff since 1934; that its business is wholesale distribution of alcoholic beverages to duly licensed retailers. He testified he knew the form of application that must be made to secure a retail package liquor license and that it was the law that all liquor sold to these stores must be billed to the person holding the license. There is no dispute as to the amount of the bill sued for. This witness stated that the records of his company show the name of the license holder in every business to which they sell.

He testified he had been with the company since 1934; that he was personally acquainted with George Marable, defendant's brother; that plaintiff had been selling liquor to George Marable from 1934 until the business closed in 1953. He testified he had visited the business and that George Marable operated the same; that all the business he did with The Cellar was done through George Marable. He admitted he had never seen defendant until about a month ago when his deposition was taken; that plaintiff never notified defendant about the indebtedness until May, before the business closed in July, 1953. He admitted that he suspicioned that retail package liquor dealers operated in other people's names but stated the only thing he was interested in was in properly keeping his account; that he didn't care anything about the legal matters excepting to get his money. He gave this testimony:

"Q. And as long as you get your money you don't care one bit who really owns that business? A. No, sir."

He testified that along about 1950 he learned that George Marable was getting in bad shape financially. He gave this testimony:

"Q. 1950, that is when you discussed it and found out about it? A. Yes, sir.

"Q. What you said, you found it out in 1950, how did you find it out? A. It was called to my attention by one of my attorneys, and also called to my attention by one of my fellow directors in the firm."

He testified about seeing George Marable at the Colony Club and that George wasn't taking care of the business, which was one of the reasons he didn't want to extend credit to him. He stated he and George bought each other drinks at the Colony Club. He gave this testimony:

"Q. You recall that you sent word to George Marable through your agent that you were going to have to sell him C. O. D., Cash on Delivery? A. I think so.

"Q. You did do that, told George Marable you would have to sell him Cash on Delivery? A. Yes.

"Q. And you knew the license was in old man John Marable's name before he died, didn't you? A. Our records would disclose that.

"Q. And you knew it too? A. I think so.

"Q. And that was about 1950, wasn't it? A. Yes, sir."

The witness testified that payments were made on this account by George Marable whose name was on the checks. He identified a number of checks showing George Marable had made payments on the account. He also identified a number of exhibits, being checks executed by George Marable in payment for liquor purchased, which were returned for insufficient funds. Witness admitted that he went to George Marable and collected these bad checks in instal-

ments; that all the business he ever did was with George Marable.

He admitted that in July, 1953, he secured from the State Liquor Department, a copy of the application defendant made for the package liquor license. He testified he did not know that John R. Marable, Jr., ever held himself out to the public as being the owner and operator of the business. He stated he didn't know about the status.

George Marable testified for defendant that he had done business with plaintiff for 20 years, ever since plaintiff started in business; that in 1944 his license was revoked and he talked the matter over with plaintiff's officers and they knew he was securing the license in his father's name to continue the business. He testified that his father died in March, 1950, and that being desirous to stay in business he, again, talked over with the agents and officers of plaintiff how to secure a license and they knew his brother, John, was permitting him to use his name as an accommodation and was in no way interested in the business.

Defendant further offered evidence that the general reputation of this business was to the effect that George Marable was at all times the owner and operator of the business.

We think there was substantial evidence to support the finding of the jury that George Marable was the actual owner and operator of The Cellar; that John Marable had no financial interest therein; that he did not, at any time or in any manner, hold out George Marable as his agent, representative or employee, with power to bind him for the debts of the business except, it is admitted, that John R. Marable, Jr., defendant herein, made application for the license of said business; that this application contained a sworn statement that he was the owner and operator of such business and that he was issued a license containing his photograph, which was placed in the business so it could be seen by the public. Defendant, at no time, ever had any connection with the business, he being a farmer, living some eight miles out in the country. He testified that he merely signed the ap-

plication without knowing what representations or statements were made therein and that he never knew what the license contained.

Appellant's first contention is that respondent is estopped from denying ownership of the business and legal liability for the debts thereof because he wilfully made a false affidavit to secure a liquor license stating he was the sole owner and operator of the business which false affidavit was made for the purpose of assisting his brother in perpetrating a subterfuge; that respondent knew or should have known that his brother would purchase liquor under such license; that appellant relied upon respondent's statements in said false affidavit and extended credit to said business.

Respondent contends that this allegation was not raised in appellant's motion for new trial, and, therefore, is not before the court.

Appellant's motion for new trial states three reasons why the same should be granted. 1. The verdict of the jury is the result of bias and prejudice. 2. That the verdict is against the evidence and greater weight of the credible evidence, and, 3. That the verdict is against the law under the evidence.

Our courts have held that such general assignments of error in a motion for new trial preserve nothing for review. In Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297, 300, the court stated:

"The other two grounds, upon which the motion for new trial was sustained, do not go to any specific matters but are only generalities. They contain the statements that 'the said findings, orders and decrees are contrary to the evidence in the case'; and that 'the decree under the evidence and in equity should have been for the relief prayed for by the plaintiff.' Our rule is that such general statements in a motion for new trial serve no purpose in preserving anything for appellate review. * * *" (See authorities cited.) Section 512.160 RSMo 1949, V.A.M.S., provides that no allegations of error shall be considered in any civil appeal except such as have been presented to

or expressly decided by the trial court. Supreme Court Rule 3.23, 42 V.A.M.S.; Blase v. Austin, 362 Mo. 409, 242 S.W.2d 29, 31 (2); Smith v. Staley, Mo.App., 156 S.W.2d 766, 769; Findley v. Johnson, Mo.Sup., 142 S.W.2d 61, 62(1).

■ Under this attempted assignment of error appellant seems to adopt the theory that it was entitled to a directed verdict. Appellant did not ask the court to direct a verdict in the trial and it submitted its theory of the case to the jury on a different theory and would not be entitled here to abandon the theory upon which it relied in the trial. Frye v. Baskin, Mo.App., 231 S.W.2d 630.

■ Where a party asserts the affirmative of a proposition and proof thereof is necessary for his recovery, the truth and weight of his evidence, even though it be uncontradicted, are for the jury. Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558; State ex rel. Strohfeld v. Cox, 325 Mo. 901, 30 S.W.2d 462.

■ Under appellant's contention it states that respondent made a false affidavit to secure a liquor license that he was the sole owner and operator of the business purposely to assist his brother in perpetrating a subterfuge; that respondent knew the license had been issued in his name and posted publicly with his picture thereon; that respondent knew or should have known that his brother would purchase liquor under such license and that was his intent when he made the affidavit. It asserts affirmatively that appellant relied upon the false statements of respondent and extended credit to him and that respondent is estopped to deny his ownership of the business and his legal liability for the debts thereof. A general denial is filed to this allegation and under the law proof of the allegation was necessary for recovery which was a question for the jury. We hold that this assignment of error was not preserved in appellant's motion for new trial and, therefore, is not before this court.

■ We, likewise, hold that the second assignment of error, which complains that when a man knowingly and intentionally makes a false affidavit for the purpose of assisting another who is personally disqualified to engage in business under the former's license, the licensee should be declared liable for all debts incurred in the business as a matter of law, above and beyond the theory of equitable estoppel or estoppel in pais. To hold otherwise would be to countenance subterfuge and false swearing. A party cannot take advantage of his own fraud or wrong or set up the truth in contradiction of his own conduct and then make the truth an instrument of fraud. This law was declared in Liese v. Sackbauer, Mo.Sup., 222 S.W.2d 84. While this is an abstract correct statement of law declared in the authority cited, such matter was never submitted to the trial court in a motion for new trial. Likewise, the case was not tried on that theory and appellant's main instruction did not so present such theory. We, therefore, hold that this contention is not properly before this court. (See cases cited under the first allegation of error.)

Appellant's third allegation of error complains of error in admitting testimony that, according to general reputation, respondent did not own the business but that it was owned by another or was generally known as another's to prove ownership, because it amounts to no more than rumor or hearsay and did not tend to prove or disprove ownership.

■ In the instant case the court permitted witnesses to testify for respondent that the general reputation in the community around Charleston is that George Marable owned The Cellar over the objection of appellant. We think this was error.

In Strother v. McFarland, 166 Mo.App. 364, 148 S.W. 988, 989 [1] the court stated this law:

"For instance, several witnesses were permitted to testify, over the objection and exception of plaintiff's counsel, that accord-

ing to general reputation the carriage belonged to Jefferson D. Strother, plaintiff's husband. Touching this matter, one witness said, 'When I heard anything said about it, it was generally known as Jeff's black "Mariar." ' Obviously all of this testimony is incompetent, for none of it was traceable to admissions by plaintiff. It amounted to no more than rumor and hearsay and did not even tend to prove that plaintiff did not own the carriage." Diehl v. A. P. Green Fire Brick Co., 299 Mo. 641, 253 S.W. 984, 990(13).

■ We do not agree with respondent that this error was harmless for the reason that appellant failed to make a submissible case. Appellant's testimony is to the effect that respondent secured a package liquor license from the State by falsely representing that he was the sole owner and operator of the liquor store in question. It stated that it had full knowledge of these representations and the license issued showing ownership in respondent; that under the law it had to ascertain the licensee and had to bill the liquor to such licensee; that it knew that George Marable was operating the store and it also knew that he was financially in bad condition; that before it sold any liquor to the business it investigated the credit of respondent; that it relied upon the statements of respondent that he was the sole owner and operator of the business and was never informed differently, either by respondent or anyone else and that it extended the credit because of the wrongful statements by respondent in securing the license. While this was denied, yet we think the question of whether or not appellant did rely upon such representations when it extended credit to the business and was injured by respondent's conduct in the above circumstances, was a question for the jury and was properly submitted by appellant's instruction under the issues in the case. The general reputation as to who owned the business was purely hearsay and speculation and should not have been admitted in evidence.

We, likewise, do not agree with respondent's contention that the testimony was offered to refute appellant's claim that respondent held George Marable out as his agent.

■ It is next contended by appellant that error was committed in permitting respondent to cross-examine appellant's witnesses concerning whether they knew that various other liquor businesses in southeast Missouri were owned by one party, while licensed in the name of another as a subterfuge over objection of appellant.

In Castigliola v. Lippicolo, Mo.App., 229 S.W.2d 266, 269 [2, 3], the law is stated:

"The rule is that evidence of prior transactions of one of the parties to the action with other persons, even though similar to the transaction involved in the case before the court, is generally inadmissible, since there would be no such logical or necessary relation between the several transactions that anything done in connection with the one could be relied on to prove or disprove anything in issue in connection with the other. Turner v. King, Mo.App., 224 S.W. 91; Pyrtle v. International Shoe Co., Mo.App., 291 S.W. 172; Bailey-Ball-Pumphrey Co. v. German, 213 Mo.App. 11, 247 S.W. 483; Missouri Forged Tool Co. v. St. Louis Car Co., Mo.App., 205 S.W.2d 298."

Under this authority we hold the admission of such evidence was reversible error.

In the last allegation of error appellant complains that instructions numbered 4 and 5 were erroneous because they incorrectly state applicable law and they permit the jury to find George Marable was the sole owner and operator of the business contrary to respondent's admitted representations under oath, thus allowing and permitting respondent to profit by his wilful and intentional participation in the subterfuge contrary and in violation of points (A) and (B) hereinbefore.

■ Instruction No. 4 tells the jury that plaintiff must prove by the preponderance of evidence that defendant either directly authorized John Marable to purchase the merchandise or, by his conduct, acts or declarations, held George Marable out to the

public and to plaintiff as his agent and by such acts induced Moon Distributing Company to believe George Marable was his agent and authorized to purchase on his credit and that plaintiff acted in good faith when it sold the goods on defendant's credit and unless they do so believe, their verdict must be for defendant.

Of course, this instruction taken alone is in violation of appellant's first theory of estoppel which alleged that respondent made a false affidavit in his application for a liquor license; that he swore he was the sole owner and operator of the business and that he exhibited the license in a public place of said business containing his picture; that appellant had notice of respondent's affidavit in the securing of such license and, relying thereon, sold to respondent's business the goods in question, and the petition pleads that respondent is estopped to deny that he is the sole owner and estopped to deny the credit which was extended the business by appellant. Now this instruction does not present that theory at all. We think this instruction was error even when read with all of the other instructions. At least, it is in conflict with appellant's instruction.

Instruction No. 5 tells the jury that if they believe and find from the evidence that at the time the goods were sold George Marable was the sole owner and operator of the premises and that plaintiff had knowledge and was dealing with George Marable through their salesmen and other employees and knew, or, in the exercise of ordinary business prudence had good reason to believe, that George Marable was dealing for himself and not as the agent of the defendant, then their verdict should be for the defendant.

We think when this instruction is read with the other instructions it properly declares the law. In other words, appellant pleads that it relied upon the representations made by respondent that the respondent was the sole owner and operator of the business. If the appellant had knowledge that respondent was not the sole owner then appellant could not recover under the doctrine of estoppel as pleaded.

Judgment reversed and remanded for new trial.

STONE and RUARK, JJ., concur in result.